IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARYLE G. EMEL, | : | CIVIL ACTION NO. **3:CV-09-0664** |
| | : | |
| Plaintiff | : | (Judge McClure) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| ELIZABETH SINGLETON, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I. Background.**

On April 10, 2009, Plaintiff, Charyle G. Emel, a resident of Milesburg, Center County, Pennsylvania, filed this action, *pro se*, pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and civil RICO, 18 U.S.C. §§ 1962, *et seq.* Plaintiff also raises constitutional claims for violations of her civil rights, including her due process rights, under *Bivens*[1], pursuant to 28 U.S.C. § 1331.

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1343(a) and § 1331. (Doc. 1). Plaintiff paid the filing fee.

Plaintiff names as Defendants various personnel of the United States Postal Service ("USPS"). Specifically, the six (6) Defendants are: Elizabeth Singleton, Postmaster at the State College, Pennsylvania, Post Office; Kimberly Waite, Supervisor; Stephanie Houser, Clerk; Andrew

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999 (1971).

C. Katerman, Jr., U. S. Postal Inspector; Michael A. Olsavsky, Labor Relations Specialist; and R. M. Wallace, FMLA Coordinator for the USPS. (Doc. 1, p. 1).

All six Defendants were federal employees of the USPS during the relevant times of this case, which times Plaintiff concedes are, in part, deliberately vague.[2]

The Summons was promptly issued on April 13, 2009, and after Plaintiff was granted several extensions of time, she initially served four of the federal Defendants, namely, Defendants Singleton, Waite, Houser and Katerman. On October 30, 2009, Defendants Singleton, Waite, Houser and Katerman, jointly filed a Motion to Dismiss Plaintiff 's Complaint under Rule 12. **(Doc. 18).** On November 12, 2009, Defendants Singleton, Waite, Houser and Katerman filed their Brief in support of their Motion to Dismiss with attached exhibits, Exs. A and B. (Docs. 20 and 20-2). Exhibit A is a copy of the November 16, 2006 Final Decision of the USPS Equal Employment Opportunity ("EEO") dismissing Plaintiff's EEO discrimination Complaint for failing to state a claim, and Exhibit B is a copy of the Arbitration Decision dated August 17, 2006, with respect to Plaintiff's grievance against the USPS, filed on behalf of Plaintiff by the American Postal Workers Union, AFL-CIO.[3]

---

[2]Plaintiff indicates that her claims largely accrued when the USPS terminated her from its employment in August 2005. The record indicates that Plaintiff's claims continued through November 16, 2006, when her EEO discrimination complaint was finally dismissed.

[3]As noted by the Court in *White v. Probation Office*, 2008 WL 3837045, *1, n. 3 (M.D. Pa.):

> "[t]he court may consider documents of record and exhibits submitted
> by the parties when evaluating a motion to dismiss. *See Tilbury v. Aames
> Home Loan*, 199 F. App'x 122, 125 (3d Cir.2006) (quoting *Oshiver v.
> Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n. 2

On November 19, 2009, Plaintiff filed her opposition Brief to the Motion to Dismiss of Defendants Singleton, Waite, Houser and Katerman with attached exhibits. (Docs. 22, 22-2 to 22-5). Defendants Singleton, Waite, Houser and Katerman filed their Reply Brief in support of their Motion to Dismiss on December 4, 2009, with an attached exhibit, Ex. C, excerpts from Plaintiff's July 18, 2006 Arbitration Hearing regarding her grievance against the USPS. (Docs. 25 and 25-2).

The Motion to Dismiss of Defendants Singleton, Waite, Houser and Katerman (Doc. 18) is ripe for disposition.[4]

After the remaining two Defendants, Olsavsky and Wallace, were later served, they jointly filed a Motion to Dismiss Plaintiff's Complaint under Rule 12 on November 20, 2009. **(Doc. 23)**.[5] On November 20, 2009, Defendants Olsavsky and Wallace filed their Brief in support of their Motion to Dismiss with attached exhibits, Exs. A and B. (Docs. 24 and 24-2). The two Exhibits of Defendants Olsavsky and Wallace attached to their support Brief are the same two exhibits attached to the support Brief of Defendants Singleton, Waite, Houser and Katerman. On December 30, 2009, Plaintiff filed her opposition Brief to the Motion to Dismiss of Defendants Olsavsky and Wallace, *sans* the exhibits attached to her Doc. 22 opposition Brief. (Doc. 27). Defendants Olsavsky and Wallace filed their Reply Brief in support of their Motion to Dismiss on

---

(3d Cir.1994)) (observing that a court may consider exhibits submitted by the parties when ruling on a motion to dismiss)."

[4]The undersigned has been assigned this case for all pre-trial matters pursuant to 28 U.S.C. § 636(b)(1)(A).

[5]The same counsel, AUSA Stephen Cerutti, represents Defendants Singleton, Waite, Houser and Katerman, and Defendants Olsavsky and Wallace.

January 7, 2010. (Doc. 28). The Motion to Dismiss of Defendants Olsavsky and Wallace is also ripe for disposition.

We will consider both dispositive motions (Docs. 18 and 23) in this Report and Recommendation since both groups of Defendants, represented by the same counsel, raise essentially the same arguments for dismissal of Plaintiff's Complaint. (Doc. 20, p. 3 and Doc. 24, p. 3).

## II. Allegations of Plaintiff's Complaint.

Plaintiff summarizes her broad claims and states, "the Defendants are guilty of violating my civil rights, denying me due process under law as guaranteed under the 5th amendment, violating the [ADA]. They committed conspiracy, fraud, perjury, threats & harm upon my sanity, and livelihood." (Doc. 1, p. 18). As indicated above, Plaintiff is asserting claims against Defendants for civil rights and due process violations under *Bivens*, discrimination claims under the ADA, and civil RICO claims.

Plaintiff, a former clerk with the USPS at the State College Post Office, avers that when Defendant Singleton became Postmaster, Defendants commenced "an illegal program of union busting & personnel targeting took place". (Doc. 1, p. 2). Plaintiff states that she was the president for the clerks' union.[6]

---

[6]Defendants' exhibits attached to their Briefs indicate that in August 2005, Plaintiff was a "Lead Sales/Service Associate" with the USPS at the State College, Pennsylvania Post Office. (Doc. 20-2, p. 4). They also indicate that Plaintiff was the President of the State College Local APWU, postal workers union. (*Id.*, p. 17).

Plaintiff states that shortly after Defendant Singleton became postmaster, her [Plaintiff's] certification for leave under the Family Medical Leave Act ("FMLA") (Form WH-380), due to migraines, was revoked by Defendant Wallace. Plaintiff states that she repeatedly re-applied for her FMLA certification and that her applications were rejected based on unreasonable reasons such as her doctor could not predict how many migraines should would suffer. Plaintiff states that Defendants improperly refused to re-approve her for FMLA leave for her migraines even though she was previously approved for it, and that they repeatedly threatened her with suspension or loss of her job if she became sick. (*Id.*).[7]

Plaintiff states that she suffered a personality change, that she enrolled into the Employee Assistance Program, and that USPS "management knew she was mentally ill". (*Id.*, p. 3). Plaintiff avers that her two sons were serving in the military and that when a postal customer in military garb would come into the Post Office where she and her husband worked, she would panic and suffer great stress and fear until she realized the customer was not there to see her about her sons. Plaintiff also states, that at this unspecified time, she was developing constant pain in her right shoulder while at work. (*Id.*, p 4).

Plaintiff further states that at this unspecified time, Defendant Waite became her temporary supervisor, and that Waite "treated the Plaintiff differently then (sic) the other clerks, and

---

[7]We do not construe Plaintiff as raising a separate claim under the FMLA, 29 U.S.C. §§ 2601, *et seq.* (requires, in part, employers to allow an employee to take unpaid leave to care for his serious health condition and prohibits retaliation by employer for doing so). Nor does Plaintiff indicate that she is raising a separate FMLA claim. Rather, as discussed below, Plaintiff's allegations regarding the denials of her re-applications for FMLA leave for her migraines condition relate to her RICO claims against Defendants.

the only difference between the Plaintiff and her coworkers was that she was not white, but an ameri-asian (sic) [American-Asian]." (Id.). Plaintiff avers that Defendant Waite engaged her (Plaintiff's) co-workers in a friendly manner but not her. Plaintiff also avers that Defendant Waite allowed the other postal clerks to leave their posts during the day but did not allow her to leave her post. Plaintiff claims that Defendant Waite often used the phrase "You People" when she spoke to Plaintiff, and that she always spoke to her with criticizing words. Plaintiff states that Defendant Waite "hated" her and that when she [Plaintiff] injured her shoulder at work, Waite made her get off the work clock and go to a doctor contrary to USPS postal policy for work related injures.

Plaintiff states that on August 2, 2005, Defendant Waite removed her from her job on an emergency basis and, did not state what Plaintiff did wrong and why she was removed from her job. Plaintiff states that within days after she was removed from her job, Defendants Singleton and Waite posted a clerk job Plaintiff was qualified for and had the most seniority, in order to prevent Plaintiff from applying for it. Plaintiff states that her husband put in a job bid for her and that she won the bid but was told she was not qualified due to lack of required training, even though the previous two clerks hired who were white did not have to have training. (Id., pp. 6-7). Plaintiff states that she had the training and that she was later awarded the job.

Plaintiff states that in October 2005, a meeting was held with the union steward present, regarding an investigation into $60.00 of postal money missing from Plaintiff's drawer and Plaintiff's removal from her position. Plaintiff states that she advised Waite that the money was stolen and that she placed it on Defendant Houser's counter next to hers. Plaintiff avers that Defendant Waite removed her from her job and tired to conduct the investigation without giving her a chance to

6

explain what happened to the missing postal money. Plaintiff also states that Waite failed to perform an immediate audit with respect to the missing money from her clerk's drawer. (*Id.*, p. 8).[8] Plaintiff states that Defendant Houser "did not see eye to eye" with her, and that Houser was "an avowed racist" who did not like Asians and people who did not speak English, and that Singleton was aware of this. (*Id.*, p. 9). Plaintiff also avers that Defendant Houser was jealous of her for many reasons. (*Id.*, p. 10). Plaintiff further alleges that Defendant Houser, prior to the missing $60, encouraged her not to charge her [Plaintiff's] two sons ($60 total) for their passport applications and that Houser tried to set her up. Plaintiff states that she paid for her sons' passport applications and that Houser then took the $60 she [Plaintiff] placed near Houser's counter to make it appear as though Plaintiff did not collect the money for her sons' passports. Plaintiff claims that her postal superiors did not order an immediate audit when Plaintiff was short $60 since it would have shown that Houser had the money missing from her drawer. (*Id.*, pp. 11-12).

Plaintiff also seems to allege that Defendant Houser tried to befriend her in order to report to Defendant Waite about her activities, and to try and give Waite reasons to have Plaintiff removed from her job. Plaintiff states that Defendant Houser wanted her removed from her position so that she could then have Plaintiff's position, which would give her the weekends off and a pay raise.

Plaintiff states that Defendant Houser was given a polygraph test regarding the missing money and that Defendant Postal Inspector Katerman, who arranged the test, withheld this evidence from the Union. (*Id.*, p. 13). Plaintiff states that Defendant Katerman lied about her

---

[8]These stated allegations appear to comprise, in part, Plaintiff's due process claims.

7

refusing a meeting with him and her attorney, and that she told him Houser took her money. Plaintiff also states that Defendant Katerman refused to perform a proper investigation into the missing money, refused to perform an audit, withheld evidence, conspired with other Defendants to defraud her of her job, and lied under oath at her Arbitration hearing. (Id., p. 14). Plaintiff states that she lost her Arbitration hearing through fraud.

Plaintiff avers that she filed a worker's compensation claim for her work injury to her right shoulder, and that all of the paperwork she completed, some prior to February 2005, which was kept in Defendant Singleton's office, vanished. (Id., p .1 4).

Plaintiff claims that Defendants Singleton, Waite and Houser took all of the alleged actions against her due to "racism." (Id., p. 15).

Plaintiff alleges that many of the Defendants gave evidence against her, and carried out the lies and fraud against her about the missing $60 from her drawer in order to cover up the fact that they illegally removed her from her job. (Id., p. 17). Plaintiff indicates that she was criminally charged with the theft of the missing money, and that her federal criminal case was docketed to 4:CR-06-440, M.D. Pa.[9]

---

[9]We take judicial notice of Plaintiff's federal criminal docket sheet which we attach to this R&R as Att. A. See Hopkins v. Owners of West Coast Videos, 2007 WL 1469008, * 3 (W.D. Pa.) (in reviewing complt. under Rule 12(b)(6) standard, Court can take judicial notice of public records) (citations omitted).

In U.S. v. Emel, 4:06-CR-440, a Misdemeanor Information was filed against Emel (our Plaintiff) on December 29, 2006, charging her with one count of theft regarding the missing $60.00 from her drawer, which led to her termination from her position with the USPS. Emel pled guilty to the Misdemeanor Information on February 23, 2007. On January 11, 2008, Magistrate Judge Mannion sentenced Emel to one year probation, and she was directed to pay a $25 special assessment and restitution of $534.95 to the Postal Union and $60.00 to the USPS. On July 29, 2008, Emel was discharged from probation.

As relief, Plaintiff seeks $2,000,000.00 in compensatory damages and treble damages seemingly as punitive damages. (*Id.*,p. 18).[10]

---

There is no indication that Emel successfully appealed her federal criminal conviction and had her conviction overturned.

[10]To the extent Plaintiff seeks money damages for allegedly being wrongfully charged and convicted in her federal criminal case docketed to 4:CR-06-440, M.D. Pa., Plaintiff is *Heck*-barred.

This Court in *Supples v. Burda*, Civil No. 07-1560, M.D. Pa., 10-26-07 Memorandum (J. Caldwell), pp. 6-7, 2007 WL 3165537, stated:

> In *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court clarified the interplay between habeas and civil-rights claims. The Court ruled that a section 1983 claim for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87, 114 S.Ct. at 2372, 129 L.Ed.2d at 394 (footnote omitted).
>
> *Heck* has been extended to requests for declaratory and injunctive relief. *See Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997) (*Heck* bars a section 1983 action seeking damages and declaratory relief which challenges a prison disciplinary hearing forfeiting good-time credits). As the Court explained in *Wilkinson v. Dotson*, 544 U.S. 74, 81-82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (emphasis in original): "a state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) - *if* success in that action would necessarily demonstrate the invalidity of the confinement or its duration." As the Third Circuit has summarized the holding of *Heck*: "where success in a § 1983 action would implicitly call into question the validity of conviction or duration of sentence, the plaintiff must first achieve favorable termination of

his available state or federal habeas remedies to challenge the underlying conviction or sentence." *Williams, supra,* 453 F.3d at 177 (Emphasis added).

See also *Walker v. Zenk*, Civil No. 01-1644, M.D. Pa., 2-7-08 Memorandum slip op. pp. 25-28; *Mendoza v. Meisel*, 270 Fed. Appx. 105,107 (3d Cir. 2008)(*Heck* held that "§ 1983 damages actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments that necessarily require the Plaintiff to prove the unlawfulness of his conviction or confinement")(Per Curiam).

Any allegations of Plaintiff which would necessarily demonstrate the invalidity of her federal conviction and sentence, and any claims whose success would directly call into question the legality of her conviction and sentence, would be *Heck*-barred. Plaintiff's criminal docket sheet indicates that she fully served her federal sentence, and it does not indicate that Plaintiff's conviction was ever overturned.

In *Rose v. Mahoning Tp.*, 2008 WL 918514, *6 (M.D. Pa.), the Court stated:
Plaintiff's first constitutional claim, right to be free from unwarranted arrest, is precluded due to his guilty plea. The United States Supreme Court has held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions, whose unlawfulness would render a conviction or sentence invalid, a §f 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey,* 512 U.S. 477, 486-487, 114 S.Ct. 2364, 1129 L.Ed.2d 383 (1994). The plaintiff pled guilty and that conviction has not been reversed, expunged, declared invalid or called into question; therefore, he cannot pursue a federal civil rights claim that that arrest was improper. The plaintiff's claim involving his right to be free from unwarranted arrest will thus be dismissed.

Thus, insofar as Plaintiff is deemed as raising §1331 claims for challenging her federal criminal prosecution and conviction, these claims would all be subject to dismissal since they are *Heck*-barred.

## III. Discussion.

Initially, as Defendants note (Doc. 24, p. 3, n. 8), Plaintiff's broad Complaint, consisting of 18 typed pages, is in clear violation of Fed. R. Civ. P. 8(a) and 10(b) as it does not contain any numbered paragraphs and a proper prayer for relief. Also, Plaintiff's Complaint is both vague and confusing with respect to her claims and the relevant dates. Plaintiff admits that her Complaint is vague with respect to naming her USPS co-workers who had personal knowledge of her claims, and she states that it is vague in order to protect them from reprisal. Plaintiff also admits that her Complaint it is vague with respect to the time lines of her claims. (Doc. 22, p. 5). With respect to her vagueness, Plaintiff states, in part, that she was "medicated on antidepressants" and that she was "being threatened & beat down mentally everyday at work". She also states that she was vague since she was fearful for her former USPS co-workers if she mentioned them in her pleading, *i.e.* she feared the USPS would retaliate against her former co-workers she identified as witnesses. Plaintiff states that she will "make full disclosure when it is time to present [her] evidence to the court." (*Id.*).

*Pro se* litigants, such as Plaintiff, are accorded substantial deference in federal court. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Hughes v. Rowe*, 449 U.S. 5 (1980). They are not, however, free to ignore the Federal Rules of Civil Procedure. *See Palencar v. Cobler Realty Advisors*, Civil No. 09-0325, M.D. Pa.

Federal Rules of Civil Procedure 8(a)(2) requires that, in order to state a claim, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it

11

rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1959 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Thus, "[a] party must state its claims . . . in numbered paragraphs, each limited to a single set of circumstances" and, "if doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . " Fed.R.Civ.P. 10(b).

As stated, we agree with Defendants that Plaintiff's Complaint is in violation of Rules 8 and 10, and that her explanation as to its vagueness does not excuse the deficiencies.

1. *Statute of Limitations ("SOL") with respect to Plaintiff's Bivens Claims*

Defendants contend that Plaintiff's *Bivens* claims for violations of her constitutional rights, including due process claims, are barred by the applicable SOL. We agree.

Since Plaintiff is suing federal officials, all employees of the USPS, for alleged violations of her constitutional rights and is seeking money damages, her constitutional claims are asserted under *Bivens*, and, to this extent, her case is a § 1331 civil rights action. *See Banks v. Roberts*, 2007 WL 3096585, * 1 (3d Cir. 2007 (Non-Precedential)[11]; *Ricketts v. AW of UNICOR*, 2009 WL 2232467, *1, n. 2 (M.D. Pa.).

In *Ricketts v. AW of UNICOR*, 2009 WL 2232467, *9, the Court stated:

> In applying the statute of limitations to a *Bivens*-type civil rights action, a federal court must employ the appropriate state statute of limitations which governs personal injury actions. *Wilson v. Garcia*, 471 U.S. 261,

---

[11]The Third Circuit in *Banks v. Roberts*, C.A. No. 07-2793, slip op. p. 2, n. 1, 2007 WL 3096585, * 1, n. 1 (3d Cir. 10-19-07) (Non-Precedential), noted that "A '*Bivens* action' is a commonly used phrase for describing a judicially created remedy allowing individuals to seek damages for unconstitutional conduct by federal officials. This constitutional tort theory was set out in *Bivens* . . . "

12

276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Urrutia v. Harrisburg County Police Dept.,* 91 F.3d 451, 457 n. 9 (3d Cir.1996); *King v. One Unknown Fed. Corr. Officer,* 201 F.3d 910, 913 (7th Cir.2000) (noting that the statute of limitations for a § 1983 action and a *Bivens* action are both governed by the state statute of limitations for personal injury claims). The *Wilson* Court clarified that courts considering federal civil rights claims "should borrow the general or residual [state] statute for personal injury actions." *Owens v. Okure,* 488 U.S. 235, 250, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Little v. Lycoming County,* 912 F.Supp. 809, 814 (M.D.Pa.1996). Pennsylvania's applicable personal injury statute of limitations is two years. *See* 42 Pa. Cons.Stat. Ann. § 5524(7); *Kost v. Kozakiewicz,* 1 F.3d 176, 190 (3d Cir.1993).

However, the date when a cause of action accrues is still a question of federal law. *Smith v. Wambaugh,* 887 F.Supp. 752, 755 (M.D.Pa.1995). Under federal law, a civil rights cause of action accrues, and the statute of limitations begins to run, when the plaintiff "knew or should have known of the injury upon which [the] action is based." *Sameric Corp. of Delaware, Inc. v. City of Philadelphia,* 142 F.3d 582, 599 (3d Cir.1998) (section 1983 action). The limitations period begins to run if a plaintiff has sufficient notice to place him on alert of the need to begin investigating. *Gordon v. Lowell,* 95 F.Supp.2d 264, 272 (E.D.Pa.2000). Under *Gordon,* a "claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." *Id.*

See also *Joyner v. BOP,* 2005 WL 3088371(two-year SOL for *Bivens* claim in PA).

Granting a Rule 12(b)(6) motion based on the statute of limitations grounds is proper if the complaint facially shows non-compliance with the limitations period." *Hruska v. Vacation Charters, Ltd.,* 2009 WL 223865, *2 (M.D. Pa.)(citation omitted).

As Defendants state, notwithstanding the vagueness in Plaintiff's Complaint, it is clear that all of the conduct by Defendants which allegedly violated Plaintiff's constitutional rights occurred during her employment with the USPS at the State College Post Office and during the administrative proceedings with respect to Plaintiff's EEO discrimination complaint she filed against

13

the USPS regarding her August 2005 termination from her postal position. Based on Plaintiff's allegations and the exhibits submitted, the final Decision was issued by the USPS EEO Investigative Services Office on November 16, 2006, with respect to Plaintiff's October 19, 2006 EEO Complaint, and her claim that the USPS terminated her in August 2005 due to racial and disability discrimination. (Doc. 1 and Doc. 24-2). The record also reveals that Plaintiff was involved with the missing passport money incident on August 2, 2005, and that this incident lead to the USPS' issuance to Plaintiff of a Notice of Proposed Removal on October 12, 2005. (Doc. 24-2, pp. 17-20).[12] We concur with Defendants that the two-year SOL with respect to Plaintiff's constitutional claims under *Bivens* began to run on November 16, 2006, when the USPS EEO Office issued its final Decision dismissing Plaintiff's Complaint. This is the date we find Plaintiff's cause of action regarding her constitutional claims accrued, since this is clearly when Plaintiff knew or should have known of her injuries upon which her stated claims were based.

Plaintiff's Complaint in the present action was filed on April 10, 2009. (Doc. 1). The SOL with respect to her constitutional claims expired on November 16, 2008, and we will recommend that these claims as against all Defendants be dismissed as time barred unless equitable tolling principles excuse Plaintiff's untimely *Bivens* claims.

In *Ricketts v. AW of UNICOR*, 2009 WL 2232467, *10, the Court stated:

> A district court may apply any relevant state equitable tolling principles, unless they conflict with federal law and policy. *Lake v. Arnold*, 232 F.3d 360, 368-70 (3d Cir.2000). The Third Circuit has found that

---

[12]As noted above, the missing $60.00 passport money also led to the filing of the December 29, 2006 federal criminal Misdemeanor Information against Plaintiff and her January 2008 conviction and sentence.

> [e]quitable tolling is appropriate in three general scenarios: (1) where a
> defendant actively misleads a plaintiff with respect to her cause of action;
> (2) where the plaintiff has been prevented from asserting her claim as a
> result of other extraordinary circumstances; or (3) where the plaintiff
> asserts her claims in a timely manner but has done so in the wrong forum.

*Id.* at 370 n. 9.

We find no extraordinary circumstances prevented Plaintiff from timely filing her instant *Bivens* claims. We find that equitable tolling principles do not apply in this case. We find that in the exercise of reasonable diligence, Plaintiff could have discovered essential information regarding her *Bivens* claims, at the latest by November 16, 2006. In fact, in her July 18, 2006 Arbitration Hearing, Plaintiff alleged improper conduct by Defendants, much of which forms the bases for her present constitutional claims, including her due process claims. (Doc. 24, Ex. B and Doc. 24-2, pp. 28-33).

Moreover, Plaintiff does not argue for equitable tolling in her Briefs with respect to her constitutional claims and she simply states that she was vague with respect to her time lines stated in her Complaint since she "was medicated on antidepressants" since both of her sons were serving in the military in Iraq, and since she was "being threatened & beat down mentally everyday at work". (Doc. 22, p. 5). We do not find that Plaintiff has stated extraordinary circumstances which prevented her from timely filing her *Bivens* claims. Nor does Plaintiff assert that she could not have discovered, through the exercise of reasonable diligence, necessary facts with respect to her *Bivens* claims.

Additionally, as Defendants point out in their Reply Briefs (Docs. 25 and 28), Plaintiff fails to address their SOL argument with respect to her *Bivens* claims in her opposition Briefs. (Docs.

15

22 and 27). Thus, under Local Rule 7.6, M.D. Pa., Plaintiff should be deemed as not opposing Defendants' SOL argument. *See McCoy v. Edwards*, 2009 WL 1794749, * 4 (M.D. Pa.).

Therefore, we will recommend that Defendants' Motions to Dismiss all of Plaintiff's constitutional claims against them be granted, and that all of the stated claims against all Defendants be dismissed with prejudice since they are time-barred.

### 2. SOL with respect to Plaintiff's ADA Claims

At the outset, we again agree with Defendants, as we did with Defendants' argument that the SOL bars Plaintiff's *Bivens* claims, that Plaintiff fails to address, in her opposition Briefs (Docs. 22 and 27), Defendants' contentions that her claims under the ADA are time barred. Thus, we again find that Plaintiff should be deemed as not opposing Defendants' SOL defense to her ADA claims pursuant to Local Rule 7.6. *See McCoy, supra.*

Further, we find merit to Defendants' arguments that Plaintiff's discrimination claims under the ADA are time barred. In her Complaint, Plaintiff does not indicate under which title of the ADA she is raising her disability discrimination claims against Defendants. Also, Plaintiff seems to allege that she suffered an injury to her right shoulder during her employment with the USPS and that Defendants discriminated against her at the State College Post Office due to this injury.

Initially, as Defendants point out (Doc. 24, p. 6), Plaintiff incorrectly names the individual employees of the USPS as Defendants with respect to her ADA claims since it has been held in our Circuit that individuals are not liable for violations of Titles I and II of the ADA. Rather, an employer is liable for violations of the ADA. *See Emerson v. Theil College*, 296 F. 3d 184 (3d Cir. 2002);

16

*Wright v. Loftus*, Civil No. 09-1305, M.D. Pa., 11-20-09 Memorandum, p. 7. Thus, all six individual Defendants should be dismissed with respect to Plaintiff's ADA claims.

Also, as Defendants argue (Doc. 24, pp. 6-7), Plaintiff's ADA claims are time barred. As Plaintiff was advised in the November 16, 2006 final EEO Decision with respect to the dismissal of her administrative complaint asserting racial and disability discrimination claims against the USPS, she could file a civil action in federal court "within 90 calendar days of [her] receipt of this decision."[13] (Doc. 24-2, p. 6). *See Hruska v. Vacation Charters, Ltd.*, 2009 WL 223865, *3. Plaintiff filed her instant Complaint with this Court on April 10, 2009, well after the 90-day period expired.

Additionally, as Defendants contend, even if Plaintiff is deemed as raising general disability claims under the ADA, they would be barred by the applicable two-year SOL. (Doc. 24, p. 7).

In *Datto v. Harrison*, 2009 WL 2914406, *9 (E.D. Pa.), the Court stated:

> Although the statute of limitations is an affirmative defense, it may be raised in a motion to dismiss where the plaintiff's failure to comply with the limitations period is apparent from the face of the pleadings. In evaluating the statute of limitations on a motion to dismiss, a court is limited to the allegations of the complaint, the exhibits attached to the complaint, and matters of public record. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n. 1, n. 2 (3d Cir.1994). A court must accept the factual allegations of the complaint as true, but need not accept as true legal conclusions couched as factual allegations.

---

[13] Plaintiff does not aver that she failed to timely receive the November 16, 2006 EEO Decision.

In the November 16, 2006 EEO Decision, Plaintiff was also advised that she could appeal the Decision to the EEOC within 30 days of her receipt of the Decision. There is no claim that Plaintiff filed an appeal with the EEOC, and no exhibit indicates such an appeal.

> *Ashcroft v. Iqbal,* --- U.S. ----, ----, 129 S.Ct. 1937, 1950, 173
> L.Ed.2d 868 (U.S.2009).  3] The statute of limitations for the plaintiff's ADA
> and Rehabilitation Act claims is two years. Because neither the ADA
> nor the Rehabilitation Act contains an express limitation period, their
> statute of limitations is determined by looking to the limitations period
> for the most analogous cause of action in the state in which it sits.
> For the plaintiff's claims under the ADA and the Rehabilitation Act,
> this is Pennsylvania's two-year limitations period for personal injury
> actions. *Disabled in Action of Pa. v. S.E. Pa. Trans. Auth.,* 539 F.3d 199,
> 208 (3d Cir.2008) (upholding application of Pennsylvania's personal
> injury limitations period to claims under ADA Title II and § 505
> of the Rehabilitation Act); *Soignier v. Am. Bd. of Plastic Surgery,* 92 F.3d
> 547, 551 (7th Cir.1996) (upholding application of state law personal
> injury statute of limitations to claim under ADA Title III).

Plaintiff's disability discrimination claims arose, at the latest, on or about November 16, 2006, when the EEO issued its final Decision denying her administrative complaint.  Thus, her ADA claims are time barred even if they are governed by the two-year SOL.[14]  As the *Datto* Court stated:

> Both the United States Supreme Court and the United States Court of
> Appeals for the Third Circuit have addressed when claims arising out
> of a termination or dismissal accrue in the context of employment
> discrimination claims under statutes other than the ADA and the
> Rehabilitation Act. These decisions have held that, in the employment
> context, a claim of unlawful discrimination accrues when an
> employer "establishes its official position and communicates that
> position by giving notice to the affected employee." *Bailey v. United
> Airlines,* 279 F.3d 194 (3d Cir.2002) (citing *Del. State College v. Ricks,*
> 449 U.S. 250, 257, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)). A
> employer establishes an "official position" when it "unconditionally"
> makes an adverse employment decision and communicates that decision

---

[14]While it could be argued that Plaintiff's ADA discrimination claims accrued at the latest on October 12, 2005, when the USPS issued the Notice of Plaintiff's Proposed Removal and Plaintiff was made aware of its Decision to terminate her (Doc. 24-2, p. 17), we give Plaintiff the benefit of the additional time until she received the November 16, 2006 EEO Decision.  *But see Datto, supra,* *12 ("Plaintiff's [ADA] cause of action arose when the initial decision [to dismiss Plaintiff] was communicated to him, not upon the conclusion of his appeal.").

18

to the plaintiff. *Id.; see also Watson v. Eastman Kodak Co.*, 235 F.3d 851, 855-56 (3d Cir.2000); *Colgan v. Fisher Scientific Co.*, 935 F.2d 1407, 1419 (3d Cir.1991) (ADEA claim accrued when the employer reached a "definitive conclusion" to terminate the plaintiff).

Moreover, even if Plaintiff 's ADA claims were not time barred, we find that she failed to state any ADA claim against any Defendant.

The ADA provides that:

> no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

A covered entity is defined as "an employer, employment agency, labor organization, or joint labor-management committee." 42 U.S.C. § 12111(2). *See also Wright v. Loftus*, Civil No. 09-1305, M.D. Pa., 11-20-09 Memorandum, p. 7. An employer is defined as a "person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks or in the current or preceding calendar year, and any agent of such person . . ." 42 U.S.C. § 12111(5).

The Court in *Bjorklund v. Phila. Housing Auth.*, 118 Fed. Appx. 624, 625-626 (3d Cir. 2004), stated that Plaintiff must prove the following elements in an ADA action:

> (1) he [plaintiff] was a qualified individual with a disability or who was regarded as having a disability; [FN1] and (2) that he suffered an adverse employment action as a result of his disability or perceived disability. *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 511-12 (3d Cir. 2001); *see also Rinehimer v. Cemcolift, Inc.*,

19

292 F.3d 375, 381 (3d Cir. 2002).

The ADA defines a "qualified individual with a disability" as

> an individual with a disability who, with or without
> reasonable accommodation, can perform the
> essential functions of the employment position that
> individual holds or desires.

42 U.S.C. § 12111(8).

In order for a Plaintiff to establish a discrimination claim under the ADA, she must show that she was a "qualified individual with a disability" at the time the adverse employment actions were taken. *Bjorklund, supra.*

A Plaintiff establishes a *prima facie* case under the ADA by demonstrating: (1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) she has suffered an adverse employment decision as a result of discrimination. *Gaul v. Lucent Technologies,* 134 F.3d 576, 580 (3d Cir. 1998), *citing Shiring v. Runyon,* 90 F.3d 827, 831 (3d Cir. 1996).

Our Plaintiff has not stated a *prima facie* case under the ADA. She does not sufficiently allege that she is a disabled person within the meaning of the ADA, that she was qualified to perform the essential functions of her job, and that she has suffered an adverse employment decision as a result of discrimination. Therefore, we will recommend that Plaintiff's claims under Title I of the ADA against all Defendants be dismissed.

To the extent that Plaintiff is also raising a claim under Title II of the ADA, 42 U.S.C. § 12132, the Court stated in *Wright v. Loftus,* Civil No. 09-1305, M.D. Pa., 11-20-09 Memorandum, p. 8:

Title II of the ADA prohibits a "public entity" from denying a qualified individual with a disability participation in the services, programs, or activities of that public entity, or access to public transportation. 42 U.S.C. §§ 12132, 12142, 12162.

While the USPS is a public entity, Plaintiff does not allege that she was a qualified individual with a disability and that the USPS denied her participation in its services, programs, or activities. Therefore, we will recommend that Plaintiff's claims under Title II of the ADA against all Defendants be dismissed.[15]

### 3. Civil RICO Claims

As mentioned, Plaintiff asserts that she has been injured by Defendants due to their violations of RICO, 18 U.S.C. § 1962(c) and due to their conspiracy to violate RICO under §1962(d). Defendants argue that Plaintiff has failed to state any civil RICO claim for which relief can be granted her. Plaintiff argues that she has stated a claim that Defendants conspired to violate RICO. (Doc.22, p. 2 and Doc. 27, p. 2). Plaintiff states that she alleged Defendant Houser stole her $60 cash which was to be used as payment for her sons' passport fees, and that after Houser reported the theft to Defendant Katerman, the postal inspector, Katerman refused to conduct a proper investigation into the theft and his investigation was filled with fraud. (*Id.*). Plaintiff also states that the Arbitration Hearing held with respect to her administrative complaint "was rife with perjury & fraud, [and that] there was no due process." Plaintiff states that Defendants' alleged

---

[15]We will recommend that all of Plaintiff's ADA claims against all Defendants be dismissed with prejudice since we find futility of any amendment since they are time barred.

21

conduct with respect to the investigation and her termination, amounted to "extortion under color of official right". (*Id.*).[16]

Further, Plaintiff states that the USPS constituted an enterprise since it was "a passive instrument through which racketeering acts [were] committed, advanced or concealed." (*Id.*, p. 3). Plaintiff argues that Defendants are engaged in a pattern of racketeering activity since there is another criminal case with this Court, Criminal No. 09-CR-0295, M.D. Pa., involving a USPS letter carrier, and the sole witness against him is Defendant Houser, and the postal inspector regarding this other criminal case is Defendant Katerman . (*Id.*).   Plaintiff seems to contend that simply because Defendants Houser and Katerman are involved with another criminal case against another postal employee, they engaged in a pattern of racketeering activity regarding their actions against her.

Plaintiff asserts RICO claims based upon violations of 18 U.S.C. §§ 1512 (b) and (c) for tampering with a witness, victim or informant, as well as for a violation of 18 U.S.C. § 1341 for mail fraud.   Plaintiff argues that she will be able to prove that Defendants were engaged in a pattern of fraudulent conduct and multiple schemes of concocting fraudulent disciplinary actions against USPS employees, such as denying their FMLA leave requests, and that Defendants then threatened employees with disciplinary actions for missing work with no valid excuse.  Plaintiff states that it was difficult for a USPS employee to obtain a valid doctor's excuse with respect to a request for leave

---

[16]As indicated, Plaintiff was convicted and sentenced regarding the missing $60.00. *See* Att. A hereto. Thus, Plaintiff's civil RICO claims are, in part, based on Defendants' alleged improper conduct regarding her termination, despite the fact that she was convicted and sentenced for her own criminal actions involving the same events.

22

under the FMLA, and that Defendants made the employee use his/her leave time to have the doctor fill out the FMLA form. Plaintiff also states that it cost the employee money to get the doctor's signature. Plaintiff states that Defendants took advantage of these difficulties and that this shows they engaged in a pattern of fraud. She states that this conduct "gives management a pattern of multiple disciplinary actions as proof you deserve to be terminated!" (Doc. 27, pp. 3-4).

Plaintiff also states that since all of her FMLA requests were processed through the mail and sent to Defendant Wallace, whom she never met, and since the denials of her FMLA requests amounted to a pattern of fraud by Defendants, this conduct constituted mail fraud under 18 U.S.C. § 1341. (Doc. 27, pp. 3-4).

Plaintiff contends that Defendants Waite, Singleton and Olsavsky committed fraud with respect to her grievance complaint and the grievance process by conducting the process in violation of the USPS's contract with the Union. Plaintiff states that she and the Union were both defrauded by the Defendants' "illegal schemes". (Id., p. 5).

Plaintiff contends that Defendants violated 18 U.S.C. §§ 1512 (b) and (c) for tampering with a witness, victim or informant, based on her following exhibits attached to her Doc. 22 Brief (Doc. 27, pp. 6-7):

1. Ex. 1, Portions of transcript of Plaintiff's July 18, 2006 Arbitration Hearing.[17] Plaintiff claims that Defendant Houser wrote two statements for Defendant Katerman but that she only

_____

[17]Both Plaintiff and Defendants submit copies of the transcript from Plaintiff's July 18, 2007 Arbitration Hearing. Doc. 24, Ex. B and Doc. 22-2). Defendants submit the complete transcript and Plaintiff submits only portions of it. Also, all of Plaintiff's exhibits are attached to her Doc. 22 opposition Brief.

received one statement, and that Houser took a polygraph test, but Plaintiff did not have knowledge of this and did not receive the results.

2. Ex. 2, the October 21, 2005 USPS Cash Credit Count and Summary of Defendant Houser which was examined and signed by Defendant Waite. Plaintiff claims that Defendant Waite failed to perform an audit after the $60 was missing from Plaintiff's drawer and Plaintiff claimed that Houser took her money. Plaintiff states that Defendant Waite did perform an audit (Ex. 2) when a customer claimed she over paid Houser. Also, the $60 Plaintiff claims Defendant Houser stole from her is part of her alleged injury with respect to her civil RICO claims along with the loss of her job.

3. Ex. 3, Plaintiff's August 31, 2005 sworn statement (handwritten and typed version) to Special Agent Ballas, U.S. Department of State, Diplomat Security Service, which Plaintiff states was relayed to the Postal Inspector [Katerman] by Ballas even though Plaintiff declined to be interviewed by the Inspector without her attorney. (See Doc. 22-2, pp. 16-17). While Plaintiff indicates that her statement to Agent Ballas was made by her "Pro se", the record shows that she made her statement in the presence of her attorney Karen Muir, Esq., and that her attorney signed her statement as a witness. (Doc. 22-4, p. 3 and 22-5).

4. Ex. 4, one page of Postal Inspector Defendant Katerman's Report (page 4 out of 5 pages) regarding the missing $60 from the amount Plaintiff remitted for passport fees on August 2, 2005, and his investigation as to whether Plaintiff falsified government documents by indicating that she administered the oath to her sons with respect to their passports when she did not do so. Plaintiff claims that Defendant Katerman failed to mention that she reported to Agent Ballas that

24

the $60 fee for her sons' passports was paid, and that she told Ballas that she thought Defendant

Houser stole her money and that Defendant Waite failed to perform an audit.[18]

In *Ukasik v. McWilliams*, 2009 WL 3516441, *6-*7 (W.D. Pa.), the Court explained as

follows with respect to a civil RICO claim:

> RICO provides a civil remedy for [a]ny person injured in his business or property by reason of a violation of Section 1962 of this chapter." FN22 18 U.S.C. § 1964(c). In turn, Section 1962 prohibits four types of activities. Section 1962(a) prohibits "any person who has received any income derived ... from a pattern of racketeering activity" from using that income to acquire, establish or operate any enterprise which is engaged in interstate or foreign commerce.FN23 Section 1962(b) prohibits "any person through a pattern of racketeering activity" from acquiring or maintaining any interest in or control of any enterprise engaged in interstate or foreign commerce. Section 1962(c) prohibits any person employed by or associated with any enterprise engaged in interstate or foreign commerce from conducting or participating in the conduct of the enterprise's affairs "through a pattern of racketeering activity." Finally, Section 1962(d) prohibits any person from conspiring to violate any of the provisions of subsections (a), (b) or (c).FN24

>> FN22. A successful plaintiff in a civil RICO action may recover treble damages and the cost of the suit, including a reasonable attorney's fee. 18 U.S.C. § 1964(c).

>> FN23. Under RICO, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not

---

[18]We note that we completely agree with Defendants' rationale (Doc. 25, pp. 7-12) as to why Plaintiff's Exhibits do not show they engaged in a pattern of racketeering activity.

Further, we find that Plaintiff cannot now claim that the $60 was stolen from her by Houser and use this alleged theft and the alleged failure of Defendants to investigate her story as predicate acts for her RICO claims, since Plaintiff was convicted regarding the missing $60.

a legal entity." 18 U.S.C. § 1961(4).

FN24. In the present case, Plaintiff asserts that Defendants violated all four subsections of Section 1962. (Document No. 48, ¶ 1).

Case law has established separate requirements for certain subsections of Section 1962FN25 *See Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1411 (3d Cir.1991). However, all subsections of Section 1962 require a "pattern of racketeering activity." No defendant can be liable under RICO unless he participated in two or more predicate offenses sufficient to constitute a pattern. *Banks v. Wolk,* 918 F.2d 418, 421 (3d Cir.1990).

FN25. For example, in Kehr, the Third Circuit noted that under Section 1962(a), a plaintiff must allege injury specifically from a defendant's use or investment of income from racketeering activity in the named enterprise and, under Section 1962(b), a plaintiff must allege a specific nexus between control of a named enterprise and the alleged racketeering activity. However, Section 1962(c) is not subject to these nexus limitations. Moreover, while an entity can be both an enterprise and a defendant for purposes of Section 1962(a), such a dual role is impermissible in actions based on Section 1962(c). *See* 926 F.2d at 1411.

Section 1961(1) sets forth a list of the predicate offenses that constitute "racketeering activity" under RICO. The list, which is exhaustive, may be divided into two broad categories. The first category includes acts or threats involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter or dealing in a controlled substance that are chargeable under State law and punishable by imprisonment for more than one year, while the second category includes acts that are indictable under specific federal statutes.[19]

Plaintiff asserts that her RICO claims against Defendants allege the required predicate acts of racketeering activity. As stated, Plaintiff asserts RICO claims based upon violations of 18

---

[19]We deleted FN. 26 from the above quote since it was not relevant to our case.

U.S.C. §§ 1512(b) and (c), as well as 18 U.S.C. § 1341.[20] The predicate acts of racketeering, which the Plaintiff claims were committed by Defendants and which are alleged to constitute a pattern of racketeering activity, are discussed above. Plaintiff claims that RICO provides her with a civil remedy since she has been injured by Defendants' alleged conduct, and since they deprived her of her $60 which she states they stole to frame her and terminate her for not paying for her sons' passports. Thus, Plaintiff argues that Defendants deprived her of her livelihood, *i.e.* her postal job. (Doc. 27, p. 2). Plaintiff alleges that these predicate acts upon which she relies to allege a pattern of racketeering activity by the Defendants is sufficient to state a private civil RICO action against them. As noted, we find that the record shows Plaintiff's own criminal conduct was the cause of her termination and that Plaintiff cannot now try and assert that Defendants' conduct caused her termination.

As this Court stated in *Pagnotti Enterprises, Inc. v. Beltrami*, 787 F. Supp. 440, 444 (M.D.Pa. 1992):

> A "'pattern of racketeering activity' requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Racketeering activity is defined as (A) certain acts chargeable under state law, (B) acts indictable under specific provisions of Title 18 of the United States Code, (C) acts indictable under specific provisions of Title 29 of the United States Code, (D) any offense involving fraud in connection with a case under Title 11, fraud in the sale of securities, or the felonious manufacture or distribution of drugs, or (E) any act indictable under the Currency and Foreign Transactions Reporting Act. 18 U.S.C. § 1961(1).

---

[20]Since both parties quote relevant portions of 18 U.S.C. §§ 1512(b) and (c) in their Briefs, we do not repeat them herein.

27

We agree with Defendants (Doc. 20, pp. 7-10) and find that Plaintiff's allegations contained in her Complaint, discussed above, regarding her RICO claims against all Defendants are vague and completely fail to assert conduct against them which constitutes predicate acts of racketeering. As mentioned, we find that Plaintiff 's Complaint is in violation of Rules 8(a) and 10. See *Plum Property Assoc., Inc. v. Mineral Trading Co., LLC*, 2009 WL 520613 (W.D. Pa.)("Plaintiff does not specifically aver how the Defendants functioned as an enterprise colluding to carry out fraudulent schemes."). We find that all of Plaintiff's stated allegations of how she believes Defendants' conduct constituted a pattern of racketeering activity to be completely insufficient in order to state any cognizable RICO claim. As in *Plum Property Assoc.*, Plaintiff's Complaint fails to "sufficiently describe the structure, purpose, function and course of conduct of the enterprise", nor does Plaintiff's Complaint "specifically aver how the Defendants functioned as an enterprise colluding to carry out fraudulent schemes". *Id.*, *3. As Defendants state, Plaintiff "has wholly failed to allege how those instances of alleged wrongdoing amount to any of the enumerated racketeering activities, how they meet the required elements of the crimes alleged, how many of such racketeering activities occurred, who amongst the Defendants were involved in each, and has even failed (in many cases) to set forth when those actions occurred." (Doc. 20, pp. 8-9). We also agree with Defendants that Plaintiff's attempt to flesh out her RICO claims in her opposition Briefs is improper since her Complaint is void of any required specific allegations. (Doc. 25, p. 4). See *Matthews v. Villella*, Civil No. 08-0964, M.D. Pa., 2-6-09 Memorandum, p. 16("it is axiomatic that a complaint may not be amended by Plaintiff through a brief")(citation omitted).

Even if we consider Plaintiff's specific allegations regarding her RICO claims asserted, improperly, for the first time in her Briefs, as opposed to requiring Plaintiff to file an amended complaint, we find, as Defendants contend (Doc. 25, p. 5), that they fail to state any RICO claim. We also find, as Defendants state (*Id.*), that based on Plaintiff's new allegations raised in her Briefs concerning her RICO claims, it would be futile to allow her to amend her Complaint.

As Defendants recognize (Doc. 20, p. 7), in order to state a claim under § 1962(c), the allegations must include (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima SPRL v. Imrez Co.*, 473 U.S. 479, 496 (1985); *Fleet Nat. Bank v. Boyle*, 2005 WL 2455673, * 3 (E.D. Pa.); *Lester v. Percudani*, 556 F. Supp. 2d 473 (M.D. Pa. 2008). In order to establish RICO standing, "a plaintiff must first demonstrate that the defendant committed a violation of one or more subsections of section 1962, and second, that the violation was a substantial cause of the injury to his business or property." *Rehkop v. Berwick Healthcare Corp.*, 95 F. 3d 285, 288 (3d Cir. 1996).[21]

As this Court in *Pagnotti* stated,

> The import of this section [§1962(c)] is clear. It applies to a person who is associated with an enterprise and who participates in the conduct of the enterprise's affairs through a pattern of racketeering activity.

787 F. Supp. at 446.

---

[21]As stated above, we find that Plaintiff's own criminal conduct was the substantial cause of her alleged injury, *i.e.*, her termination from her employment with the USPS.

29

The *Pagnotti* Court also stated that,

> In the Third Circuit, the culpable "person" and the
> "enterprise" must be separate and distinct entities.
> *Saporito v. Combustion Engineering, Inc.*, 843 F.2d 666,
> 678 (3d Cir. 1988); *Petro-Tech, Inc., v. Western Co. of
> North America*, 824 F.2d 1349, 1359 (3d Cir. 1987).
> That is, the person charged with the RICO violation under
> § 1962(c) cannot be the same entity as the alleged
> enterprise. *B.F. Hirsch v. Enright Refining Co., Inc.*,
> 751 F.2d 628, 633 (3d Cir. 1984).

*Id.*

We find that Plaintiff has not sufficiently plead a RICO claim against any Defendants under § 1962(c) and (d). Plaintiff's allegations show that the Defendants who she asserts her RICO claims against are essentially the same entities as the alleged enterprise. Plaintiff claims that Defendants' alleged conduct caused her injury since she lost her $60 and since she lost her job with the USPS. We do not find that this states a sufficient substantial cause of an injury to Plaintiff's business or property. In fact, the record shows that Plaintiff's convicted criminal conduct was the cause of her alleged injury.

Plaintiff also states that the denial of her FMLA requests which she mailed to Defendant Wallace constitutes a scheme and pattern to deny FMLA requests of USPS employees, and that this constitutes mail fraud pursuant to 18 U.S.C. § 1341. Plaintiff concludes that this is also a predicate act of racketeering under 18 U.S.C. § 1962(c)." (Doc. 27, pp. 3-4).

Specifically, Plaintiff claims that her FMLA sick leave requests were improperly denied by Defendant Wallace. Plaintiff asserts that after Defendant Singleton became Postmaster, her certification by her doctor entitling her to leave under the FMLA for migraines (From WH-380) was

30

revoked by Defendant Wallace. (Doc. 1, p. 2). Plaintiff alleges that her FMLA leave requests were improperly denied, *i.e.* her requests for medical leave for migraines, even though this condition was previously certified by a physician and even though she was previously granted leave under the FMLA for this condition. Plaintiff states that at the relevant time, her two sons were serving in the military in Iraq, causing her migraines to increase dramatically. She alleges that when she became sick from the migraines, she was threatened with a two-week suspension if she took off work, and that she was told to re-apply for FMLA leave. Plaintiff states that she did re-apply four more times, with four different WH-380 Forms, which were filled out by three different doctors, and that they were all rejected by Defendant Wallace based on unreasonable grounds, including his explanation that her doctor could not predict ahead of time how many migraines she would suffer. (*Id.*).

In *Lester v. Percudani*, 556 F. Supp. 2d, 473, 482 (M.D. Pa.), the Court stated:

> Mail fraud or wire fraud "consists of (1) a scheme to defraud, (2) use of the mail or interstate wires to further that scheme, and (3) fraudulent intent." *See* 18 U.S.C. §§ 1341, 1343; *United States v. Pharis*, 298 F.3d 228, 234 (3d Cir.2002); *Kehr Packages Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1413 (3d Cir.1991). The mailings or transmissions "must relate to the underlying fraudulent scheme," but they need not be an essential component of it or contain any fraudulent representations. *See Kehr Packages*, 926 F.2d at 1413-14; *Bonavitacola Elec. Contractor, Inc. v. Boro Developers, Inc.*, 87 Fed.Appx. 227, 231 (3d Cir.2003). Wholly truthful mailings or transmissions may fall within the ambit of the mail and wire fraud statutes if performed in connection with a scheme to defraud. *Kehr Packages*, 926 F.2d at 1413-14, 1416 n. 3 (observing that truthful mailings that impart a false sense of security to fraud victims constitute mail fraud when sent as a component of an artifice to deceive); *Plater-Zyberk v. Abraham*, No. Civ. A. 97-3322, 1998 WL 67545, at *6 (E.D.Pa. Feb.17, 1998). The scheme to defraud, however, must include fraudulent omissions or misrepresentations capable of deceiving individuals of ordinary prudence regardless of whether the deceptive statements appear in the mailings or transmissions upon which the

scheme rests. *See Kehr Packages,* 926 F.2d at 1415; *Walter v. Palisades Collection, LLC,* 480 F.Supp.2d 797, 803 (E.D.Pa.2007).

Plaintiff argues that the alleged conduct of Defendants against her and against another employee (Rob Web) shows Defendants engaged in a pattern of racketeering activity, in part, by mail fraud under § 1341 since their FMLA requests were mailed to Defendant Wallace and processed through the mail. (*See* Doc. 27, pp. 3-4). We find that even if Defendants acted as Plaintiff alleges in her Briefs, this conduct does not amount to mail fraud. Plaintiff fails to state with specificity the circumstances constituting mail fraud as required by Fed. R. Civ. P. 9(b). Even if Plaintiff's allegations in her Complaint are true, simply because Defendant Wallace denied Plaintiff's (and Web's) FMLA leave requests for migraines *via* the mail, and simply because Plaintiff's FMLA leave requests for migraines were approved in the past, certainly does not amount to mail fraud. No scheme to defraud and fraudulent acts are sufficiently stated. We do not find that Defendant Wallace's alleged conduct with respect to Plaintiff's FMLA requests amounts to a predicate act for Plaintiff's RICO claims. Further, Plaintiff's allegations do not show the existence of a RICO enterprise distinct from her alleged mail fraud scheme.

Plaintiff also claims, as discussed above, that Defendants failed to properly conduct an investigation during the termination process and into her grievance, and that they acted improperly during her administrative appeal of her termination. She claims that Defendants' conduct violated the USPS's contract with the union, postal regulations, her civil rights and criminal laws. (*Id.*, pp. 4-5). Plaintiff argues that this conduct by Defendants constituted predicate act of racketeering. We disagree with Plaintiff. Further, we agree completely with Defendants' thorough analysis in

32

their Reply Brief (Doc. 25, pp. 7-12) as to why Plaintiff's alleged conduct by Defendants does not constitute patterns of racketeering activity for purposes of her RICO claims.

As in *Conception v. Resnnik*, 143 Fed. Appx. 422, 426 (3d Cir. 2005), the Third Circuit held that "[d]espite generally alleging that Defendants conspired to commit all manner of fraud, as well as to engage in . . . obstruction of justice, witness tempering, . . . [inmate] Conception did not explain, as was required, how defendants participated in a pattern of racketeering activity in violation of the RICO Act." The defendants in the *Conception* case were persons involved in his criminal and civil proceedings. Like the *Conception* case, our Plaintiff's allegations against the Defendants center around persons involved in her civil and criminal proceedings. Plaintiff claims that Defendants failed to adequately investigate her belief that her $60 for her sons' passports was stolen by Defendant Houser as part of a plot concocted against by many of the Defendants to set her up for her dismissal from her job. We find that Plaintiff fails to properly state Defendants' participation in a pattern of racketeering activity in both her Complaint and her Briefs, and thus, she fails to state any RICO claim. As stated, Plaintiff was convicted and sentenced with respect to the missing $60.

In *Brown v. Abdelhak*, 2000 WL 1201889 (E.D. Pa.) * 2, the Court stated that "[i]n order to have standing to bring a RICO claim, the plaintiff must have been injured in his business or property, *see* 18 U.S.C. § 1962, and that injury must have been proximately caused by the alleged RICO pattern." (Citation omitted). Additionally, the plaintiff's injury must be a concrete financial loss. *Maio*, 221 F. 3d at 483-84. Here, our Plaintiff's alleged injury is that Defendants' conduct caused her to lose her $60 for her sons's passport fees and caused her to lose her job. Plaintiff had

33

a property interest in her job with the USPS since the record indicates (Doc. 20, Ex. B) she could be discharged only for cause. *See McCleester v. Mackel*, 2008 WL 821531, *20 (W. D. Pa.)("The Supreme Court has explained that a public employee who can be discharged only for cause has a property interest in remaining employed by the government.")(citations omitted). It is also "true that a public employee who has a property interest in continued employment cannot constitutionally be deprived of that property interest with due process of law." *Id.*, *20, n. 11. However, the record in this case shows that Plaintiff was terminated from her job and that she was afforded due process.

On August 2, 2005, Defendant Waite, acting supervisor of the State College Post Office, conducted an investigation into the incident over the missing $60 from Plaintiff's passport fees for her sons. (Doc. 20-2, pp. 21-23). Defendant Waite advised Plaintiff that she was being placed on "emergency placement". (*Id.*, p. 22). Later, on August 3, 2005, the Postmaster, Defendant Singleton, returned to the Post Office and viewed the records and found Plaintiff's conduct to be a "breach of security". On August 3, 2005, the Postmaster, Defendant Singleton, conducted her own investigation and contacted the Postal Inspection Service. (*Id.*, p. 23). Postal Inspector Defendant Katerman conducted an investigation on August 10, 2005 and August 11, 2005. On August 11, 2005, Plaintiff declined to be interviewed by Defendant Katerman without her attorney present. (*Id.*, pp. 23-24). On August 31, 2005, Agent Ballas interviewed Plaintiff in the presence of her attorney, and she gave him a sworn statement (*See* Doc. 22-4). (*Id.*, p. 24). Agent Ballas called Defendant Katerman about Plaintiff's interview and on September 7, 2005, Defendant Katerman issued an Investigation Memorandum "(IM")". In his IM, Defendant Katerman stated that

Plaintiff, in her sworn statement and interview with Agent Ballas, admitted that she falsified the passport applications on August 2, 2005, and that she transmitted her sons' passports after they left the United States and were in Iraq. He stated that Plaintiff did not administer the oath to her sons with respect to their passport on August 2, 2005, and that her sons were not even in the country on this day. He stated that Plaintiff admitted that she falsified passport applications form DS-11. (Id., p. 25).

Plaintiff then had a predisciplinary interview on September 20, 2005, in front of a Union Representative, and she was given the opportunity to explain her conduct regarding her sons' passports. (Id., pp. 25-26).

After the September 20, 2005 interview, the USPS issued Plaintiff a detailed Notice of Proposed Removal on October 12, 2005. (Doc. 20-2, pp. 17-20, 26). On November 4, 2005, the State Department's Regional Director wrote a letter to the State College Postmaster and stated that the Passport Service would no longer process passport applications accepted by Plaintiff and asked that Plaintiff be removed from the Post Office's list of authorized acceptance agents. (Id., pp. 26-27). The Regional Director for the State Department stated that he had made his request since Plaintiff failed to follow passport procedures and that it was required to "protect the integrity of the U.S. passport and the passport application process." (Id., p. 27).

On October 25, 2005, the Union filed a grievance on behalf of Plaintiff, and the grievance was denied throughout the grievance process. The grievance was then appealed to arbitration on November 16, 2005. Plaintiff had an arbitration hearing regarding her grievance on July 18, 2006. (Id. and Doc. 20, Ex. B). All interested parties attended the hearing, evidence was

35

introduced and witnesses were examined. The Arbitrator found that Plaintiff failed to comply with the State Department's requirements with respect to passport acceptance agents, and that Plaintiff's conduct showed a "deliberate adjustment  designed to conceal the applications she processed for her sons when they were not present at the post office or in the country on August 2 [2005]". (*Id.*, pp. 41-42). The Arbitrator found that Plaintiff "provided false statements in a government matter". (*Id.*, p. 42). The Arbitrator found that the evidence showed Plaintiff "knowingly failed to pay the $30.00 USPS fee for each [of her sons'] passports." (*Id.*). Plaintiff's explanation about her conduct was found to be "not reasonable or plausible." (*Id.*).

The Arbitrator, in her August 17, 2006 Decision, concluded as follows:

> Management then acted upon this information and discovered that the grievant failed to follow passport acceptance procedures and that she failed to account for the two $30.00 USPS passport fees. The "records" must be considered as having been "falsified" for the reason that the grievant's sons were out of the country and unable to personally appear before any passport acceptance agent on August 2. The fact that the grievant "knew the identity of the applicants" is not the controlling Factor here; the issue is adherence to State Department and ASM rules. What she did may reasonably be "perceived as a conflict of interest", as well as premeditated conduct; in fact, she used her knowledge of passport procedures to conceal her breach of the rules. Based upon her behavior on August 2, the grievant can no longer be relied upon to protect the integrity of passport procedures or the security of the mail.

> The Arbitrator finds from the evidence that the Postal Service has just cause to issue the grievant a Notice of P proposed Removal.

(*Id.*, p. 43).

Thus, the record shows that Plaintiff was given all of the process that was due regarding her termination from her job with the USPS. The record clearly shows that Plaintiff's claimed injury to her property, *i.e* loss of her job, was not proximately caused by the alleged RICO pattern of

36

Defendants; rather, it was completely caused by Plaintiff's own deliberate, intentional and criminal conduct .

Further, it is a matter of public record, of which we have taken judicial notice, that Plaintiff was criminally convicted in this Court regarding the missing $60. Plaintiff's conviction has not been overturned on appeal, and Plaintiff has now fully served her federal sentence. (*See* Att. A hereto). In short, Plaintiff Emel's RICO allegations largely center around the Defendants' investigation into her own criminal conduct, for which she has been convicted, as well as Defendants' conduct during her termination, her grievance process and her administrative appeal of her termination. Plaintiff claims that Defendants' conduct constituted a pattern of racketeering activity and that t heir conduct caused her to lose her $60 and her job. Based on our above discussion, and based on Defendants' rationale (Doc. 25, pp. 7-12), we do not find that Plaintiff's allegations are sufficient to state any RICO claims against any Defendant.

Moreover, "RICO Plaintiffs must also demonstrate that their injuries were the direct result of the Defendant 's predicate acts." *Lester v. Percudani*, 556 F. Supp. 2d at 483. The record shows that Defendants' alleged predicate acts did not directly and proximately cause Plaintiff's injury, *i.e.* loss of her job. Rather, the record shows that Plaintiff's own criminal conduct caused her termination from the USPS.

Thus, we shall recommend that all of Plaintiff's civil RICO claims in her Complaint as against all six Defendants be dismissed for failure to state a claim.

## IV. Recommendation.

Based on the foregoing, we respectfully recommend that Defendants' Motions to Dismiss (**Docs. 18 and 23**) be granted, and that all of Plaintiff's claims against all six Defendants be dismissed with prejudice.[22]

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

Dated: February 11, 2010

---

[22]Pursuant to our above discussion, we find futility of any amendment of Plaintiff's stated claims against all Defendants, and we shall not recommend Plaintiff be granted leave to amend her pleading with respect to any of her claims. *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 235 (3d Cir. 2004); *Conway v. King Pharmaceuticals, Inc.*, 2008 WL 4128088, *2 (M.D. Pa.).

ATTACHMENT A

## United States District Court
## Middle District of Pennsylvania (Williamsport)
## CRIMINAL DOCKET FOR CASE #: 4:06-cr-00440-MEM-1
## Internal Use Only

Case title: USA v. Emel

Date Filed: 12/29/2006
Date Terminated: 01/15/2008

Assigned to: Magistrate Judge Malachy E. Mannion

### Defendant (1)

**Charyle Emel**
*TERMINATED: 01/15/2008*
*also known as*
Cherry Sprague
*TERMINATED: 01/15/2008*
*also known as*
Charyle G. Sprague
*TERMINATED: 01/15/2008*
*also known as*
Charyle G. Robley
*TERMINATED: 01/15/2008*

represented by **D. Toni Byrd**
Federal Public Defender's Office
330 Pine St
Suite 302
Williamsport , PA 17701
570-323-9314
Email: toni_byrd@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community Defender Appointment*

### Pending Counts

VIOLATIONS AND PENALTIES
(1)

### Disposition

That the deft. is hereby placed on probation for a term of one (1) year. The deft. shall pay a special assessment of $25 which is due immediately. The deft. shall pay restitution in the amt. of $534.95 to the Postal Union and $60 to the US Postal Service. The restitution shall be paid in full within 2 months.

### Highest Offense Level (Opening)

Misdemeanor

### Terminated Counts

None

### Disposition

### Highest Offense Level (Terminated)

None

**Complaints**
None

**Disposition**

---

**Plaintiff**
USA

represented by **Frederick E. Martin**
Herman T. Schneebeli Federal Building
240 West Third Street
Suite 316
Williamsport , PA 17701-6465
(570) 326-1935
Fax: 3267916
Email: Fred.Martin@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/29/2008 | 30 | ORDER as to Charyle Emel that the deft. is discharged from probation and that the proceedings in the case be terminated. Signed by Magistrate Judge Malachy E. Mannion on 7/29/08. (bs, ) (Entered: 07/29/2008) |
| 01/15/2008 | 29 | JUDGMENT as to Charyle Emel (1), Count(s) 1, That the deft. is hereby placed on probation for a term of one (1) year. The deft. shall pay a special assessment of $25 which is due immediately. The deft. shall pay restitution in the amt. of $534.95 to the Postal Union and $60 to the US Postal Service. The restitution shall be paid in full within 2 months. Signed by Magistrate Judge Malachy E. Mannion on 1/15/08. (bs, ) (Entered: 01/15/2008) |
| 01/11/2008 | 28 | (Court only) Minute Entry for proceedings held before Judge Magistrate Judge Malachy E. Mannion:Sentencing held on 1/11/2008 for Charyle Emel (1), Count(s) 1. Deft. present w/cnsl. Deft. speaks on her own behalf. Deft's cnsl. speaks on behalf of deft. AUSA speaks on behalf of the government. Deft. sentenced That the deft. is hereby placed on probation for a term of one (1) year. The deft. shall pay a special assessment of $25 which is due immediately. The deft. shall pay restitution in the amt. of $534.95 to the Postal Union and $60 to the US Postal Service. The restitution shall be paid in full within 2 months.. (Court Reporter L. Faustnaught.) (bs, ) (Entered: 01/15/2008) |
| 01/11/2008 | 27 | COURT REPORTER NOTES re Charyle Emel filed by Lori A. Fausnaught, RMR/CRR of sentencing before Judge Magistrate Judge Malachy E. Mannion on January 11, 2008. In accordance with 28 U.S.C. Section 753(b), I certify that these original notes are a true and correct record of proceedings in the United States District Court for the Middle District of PA before Judge Magistrate Judge Malachy E. Mannion on January 11, 2008. By s/ Lori A. Fausnaught, RMR/CRR. (Court Reporter Notes are viewable by court staff only). (cr6, ) (Entered: 01/11/2008) |
| 12/20/2007 | 25 | NOTICE OF HEARING as to Charyle Emel Sentencing set for 1/11/2008 11:00 AM in Williamsport - Courtroom #3 before Magistrate Judge Malachy E. Mannion. Signed by Deputy Clerk on 12/20/07. (bs, ) (Entered: 12/20/2007) |
| 12/19/2007 | 26 | (Court only) Minute Entry for proceedings held before Judge Malachy E. Mannion :Status |

| | | |
|---|---|---|
| | | Conference as to Charyle Emel held on 12/19/2007 (Court Reporter None.) (bs, ) (Entered: 12/28/2007) |
| 12/14/2007 | 24 | ORDER as to Charyle Emel Pre-Sentence Conference set for 12/19/2007 11:30 AM in Williamsport - before Magistrate Judge Malachy E. Mannion. Signed by Judge Malachy E. Mannion on 12/14/07. (bs, ) (Entered: 12/14/2007) |
| 08/09/2007 | 23 | ORDER granting 20 deft's Motion for extension of time to submit information to prob. officer concerning restitution. that the parties will have until 11/9/07 to submit additional information to the prob. officer concerning issue of restitution. All other objs. to the contents of the PSR should be submitted to the prob. office on or before 11/9/07; After PSR has been finalized, the court will set a mutually convenient time for sentencing. Signed by Judge Malachy E. Mannion on 8/9/07. (bs, ) (Entered: 08/09/2007) |
| 08/08/2007 | | (Court only) Minute Entry for proceedings held before Judge Malachy E. Mannion :Status Conference as to Charyle Emel held on 8/8/2007 (bs, ) (Entered: 08/09/2007) |
| 08/03/2007 | 22 | ORDER as to Charyle Emel that the status conf. is Continued until 8/8/07 at 1:00 p.m. in Wmspt. Signed by Judge Malachy E. Mannion on 8/3/07. (bs, ) (Entered: 08/03/2007) |
| 07/31/2007 | | ORAL ORDER as to Charyle Emel that the status conf. sched. for Monday Aug. 6th will be held at 11:30 a.m. in Williamsport (previously scheduled for 11:00).Signed by Judge Malachy E. Mannion on 7/31/07. (bs, ) (Entered: 07/31/2007) |
| 07/19/2007 | 21 | ORDER as to Charyle Emel that: A Status Conference is set for 8/6/2007 at 11:00 AM in Williamsport before Magistrate Judge Malachy E. Mannion; Signed by Judge Malachy E. Mannion on 7/19/07. (kn, ) (Entered: 07/19/2007) |
| 07/13/2007 | 20 | MOTION to Delay Submission of Presentence Report by Probation Officer by Charyle Emel. (Attachments: # 1 Certificate of Concurrence# 2 Proposed Order)(Byrd, D.) (Entered: 07/13/2007) |
| 05/24/2007 | 19 | ORDER granting 18 Motion delay of submission of Presentence Report by Prob. Officer as to Charyle Emel (1). Signed by Judge Malachy E. Mannion on 5/24/07. (bs, ) (Entered: 05/24/2007) |
| 05/23/2007 | 18 | MOTION To Delay Submission of Presentence Report by Probation Officer by Charyle Emel. (Attachments: # 1 Certificate of Concurrence# 2 Proposed Order)(Byrd, D.) (Entered: 05/23/2007) |
| 04/25/2007 | 17 | COURT REPORTER NOTES re Charyle Emel filed by Joan D. Steinbach, RMR (570.772.5769) of Initial Appearance, Arraignment & Guilty Plea before Judge Magistrate Malachy Mannion on 02/23/2007. In accordance with 28 U.S.C. Section 753(b), I certify that these original notes are a true and correct record of proceedings in the United States District Court for the Middle District of PA before Judge Magistrate Malachy Mannion on 02/23/2007. By s/ Joan D. Steinbach, RMR (570.772.5769). (Court Reporter Notes are viewable by court staff only). (cr5, ) (Entered: 04/25/2007) |
| 02/23/2007 | 16 | SEALED ORDER SETTING CONDITIONS OF RELEASE as to Charyle Emel (bp) (Entered: 02/23/2007) |
| 02/23/2007 | 15 | REDACTED ORDER Setting Conditions of Release - OR w/condition that Dft return all original documents to Postal Worker Union Local 2013 AFL-CIO within 20 days. Signed by Judge Malachy E. Mannion on 2/23/07. (bp, (Entered: 02/23/2007) |

| 02/23/2007 | 14 | PLEA OF GUILTY TO MISDEMEANOR INFORMATION entered as to Charyle Emel (bp) (Entered: 02/23/2007) |
|---|---|---|
| 02/23/2007 | 13 | WAIVER of Right to Have 30 Days to Prepare for Trial, signed by DFt. Charyle Emel, co-signed by FPD D. Toni Byrd, approved by.S.Mag.Judge Mannion. (bp) (Entered: 02/23/2007) |
| 02/23/2007 | 12 | WAIVER of Right to Trial by Jury by Charyle Emel (bp) (Entered: 02/23/2007) |
| 02/23/2007 | 11 | CONSENT TO TRIAL BEFORE US MAGISTRATE JUDGE by Charyle Emel (bp) (Entered: 02/23/2007) |
| 02/23/2007 | 10 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER D. Toni Byrd, Esquire, as to Charyle Emel. Signed by Judge Malachy E. Mannion on 2/23/07. (bp) (Entered: 02/23/2007) |
| 02/23/2007 | 9 | CJA 23 Financial Affidavit by Charyle Emel (bp) (Entered: 02/23/2007) |
| 02/23/2007 | 8 | (Court only) Minute Entry for proceedings held before Judge Malachy E. Mannion :Arraignment as to Charyle Emel (1) Count 1 held on 2/23/2007, Initial Appearance as to Charyle Emel held on 2/23/2007. Financial Afdt presented, FPD appointed, plea agreement present, reviewed, accepted and approved by Court. Dft placed under oath, colloquy w/Court, fully advised of rights. Dft executed plea of gulty to misdemeanor Information, accepted by Court, PSR orders, no trial date set at this point pending filing of PSr and any objections. (Court Reporter Joan Steinbach.) (bp, ) (Entered: 02/23/2007) |
| 02/13/2007 | 7 | NOTICE OF HEARING as to Charyle Emel Arraignment reset for 2/23/2007 02:30 PM in Williamsport - Courtroom #3 before Magistrate Judge Malachy E. Mannion. Initial Appearance (Rule 5 Hearing) reset for 2/23/2007 02:30 PM in Williamsport - Courtroom #3 before Magistrate Judge Malachy E. Mannion. (bp) (Entered: 02/13/2007) |
| 02/09/2007 | 6 | NOTICE OF HEARING as to Charyle Emel - Arraignment REset for 2/22/2007 02:00 PM in Williamsport - Courtroom #3 before Magistrate Judge Malachy E. Mannion. Initial Appearance (Rule 5 Hearing) REset for 2/22/2007 02:00 PM in Williamsport - Courtroom #3 before Magistrate Judge Malachy E. Mannion. (bp) (Entered: 02/09/2007) |
| 02/01/2007 | 5 | NOTICE OF HEARING as to Charyle Emel Initial Appearance (Rule 5 Hearing), Arraignment & Plea set for 2/22/2007 01:30 PM in Wilkes-Barre before Magistrate Judge Malachy E. Mannion. Signed by Deputy Clerk on 2/1/07. (bs, ) (Entered: 02/01/2007) |
| 02/01/2007 | | Case as to Charyle Emel Reassigned to Judge Malachy E. Mannion. Judge William H. Askey no longer assigned to the case. (bs, ) (Entered: 02/01/2007) |
| 12/29/2006 | 4 | PRAECIPE for summons filed by AUSA Fred Martin. (lg, ) (Entered: 12/29/2006) |
| 12/29/2006 | 3 | PLEA AGREEMENT as to Charyle Emel (lg, ) (Entered: 12/29/2006) |
| 12/29/2006 | 2 | Criminal Cover Sheet (Sealed) . (lg, ) (Entered: 12/29/2006) |
| 12/29/2006 | 1 | MISDEMEANOR INFORMATION as to Charyle Emel (dft 1) count(s) 1. (lg, ) (Entered: 12/29/2006) |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARYLE G. EMEL, | : | CIVIL ACTION NO. **3:CV-09-0664** |
| | : | |
| Plaintiff | : | (Judge McClure) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| ELIZABETH SINGLETON, et al., | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **February 11, 2010.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof. Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections. The briefing
> requirements set forth in Local Rule 72.2 shall apply. A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge. The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

40

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 11, 2010**